**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE SHELTON, CHAD WHITNEY, and SCHANELL ROWLETT, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Case No: 1:15-cv-10218 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CREDICO (USA) LLC, JESSE YOUNG, and ASSURANCE INTERNATIONAL, INC. | ) ) ) ) | |
| Defendants. | ) ) ) | |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

**I.     INTRODUCTION**

1.     This class and collective action is brought by Maurice Shelton, Chad Whitney, and Schanell Rowlett (collectively, "Plaintiffs"), who have worked for Credico (USA) LLC ("Credico"), and a subsidiary company operating within Credico's network, Assurance International, Inc. ("Assurance International") (collectively, "Defendants"), promoting Credico's clients' products and services through face-to-face marketing. Credico and subsidiary company Assurance International have been operating as joint employers of Plaintiffs, and the putative class promoting Credico's clients' products and services through face-to-face marketing.  Upon information and belief, Credico, from its headquarters in Chicago, Illinois, has created a nationwide pyramid scheme, whereby a network of companies across the country, including Assurance

1

International, operate as Credico's subsidiaries, and contract with workers who provide face-to-face marketing services for Credico's clients.  Credico exercises control over the day-to-day operations of the companies in its network. For example, Credico's subsidiary companies implement its "Management Training Program," which sets guidelines for the workers' schedules, and the manner in which they perform their work.  Credico employees, including President Jesse Young, and Vice Presidents Rafael Diaz and Tim Kennedy, regularly participate in meetings with Assurance International's workers, both at Assurance International's Chicago office and Credico's Chicago headquarters.

2.     Credico's practices, implemented through a network of subsidiary companies, have violated the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* by failing to pay workers minimum wage for all hours worked, and overtime.  As a precondition of their work with Credico and its subsidiary companies, workers are required to participate in training that can last up to several weeks.  These workers are not paid at all during this training period.  Upon completion of their training, these workers are required to work twelve hour shifts, six days per week, are instructed in the details of their job performance, and are monitored and reviewed frequently.  Though they are required to work twelve hour shifts, six days per week, these workers often receive an hourly rate that is less than the federal minimum wage and Illinois minimum wage and are not paid overtime, although they consistently work over 40 hours in one week.

3.     Plaintiffs bring their claims under the FLSA on behalf of similarly situated workers who have worked for Defendants in other states and nationwide, who may

choose to opt-in to this action pursuant to 29 U.S.C. § 216(b).  Additionally, Plaintiffs bring their Illinois state law claims as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of workers who have worked for Credico and its network of subsidiary companies in Illinois.  Plaintiffs seek restitution of all wages of which they were deprived, payment for their training time, and all other relief to which they are entitled.

## II.    JURISDICTION AND VENUE

4.    This court has general federal jurisdiction over this matter pursuant to to 28 U.S.C. § 1331 because the Plaintiffs have brought claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

5.    This Court has supplemental jurisdiction over Plaintiffs' Illinois state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy.

6.    The Northern District of Illinois is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs Maurice Shelton, Chad Whitney, and Schanell Rowlett worked in and around Chicago, Illinois, and Defendants Credico and Assurance International are located in Chicago, Illinois where a substantial part of the events giving rise to the Plaintiffs' claims occurred.

7.    Specifically, upon information and belief, from its headquarters at 525 W. Monroe Street, Suite 2350, Chicago, Illinois, Defendant Credico perpetrated a nationwide pyramid scheme, whereby a network of subsidiary companies across the country, including Assurance International, contract with workers who provide face-to-face sales and marketing services for Credico's clients.

8. Upon information and belief, it is from its Chicago headquarters that Credico exercises substantial control over its network of subsidiary companies. For example, it is from its Chicago headquarters that Credico created and implemented its "Management Training Program," which provides the guidelines with which its network of subsidiary companies regulate their workers. These guidelines fail to guarantee these workers minimum wage for all hours worked, and do not provide for overtime for hours worked over 40 in one week. As a direct result of Credico's policies, workers often fail to earn minimum wage and overtime pursuant to federal and state law.

9. Upon information and belief, it is from its Chicago headquarters that Credico contracts with the clients for which its subsidiary companies provide face-to-face sales and marketing services.

10. Upon information and belief, it is from its Chicago headquarters that Credico provides its network of subsidiary companies with financial and legal support, and controls and manages the finances for the companies in its network.

11. Upon information and belief, it is from its Chicago headquarters that Credico determines the criteria by which a worker can create his own company in the Credico network.

12. Upon information and belief, it is from its Chicago headquarters that Credico issues each company in its network the tablets required to provide face-to-face sales and marketing services for its clients.

13. Upon information and belief, it is from its Chicago headquarters that Credico conducts background checks on each prospective worker who interviews to provide face-to-face sales and marketing services to its clients through its network of

subsidiary companies.

14.     Defendant Assurance International is also headquartered in Chicago, Illinois, at 55 E. Monroe Street, Suite 3800.  Plaintiffs Shelton, Whitney, and Rowlett, and other putative class members, report to Assurance International's headquarters each morning, and provide face-to-face sales and marketing services for Credico's clients in and around the Chicago area.

### III.     PARTIES

15.     Plaintiff Chad Whitney is an adult resident of Chicago, Illinois.  Mr. Whitney worked for Credico and Assurance International providing face-to-face marketing services to their clients in Chicago, Illinois from May 2015 to June 2015.

16.     Plaintiff Schanell Rowlett is an adult resident of Chicago, Illinois.  Ms. Rowlett worked for Credico and Assuarnce International providing face-to-face marketing services to their clients in Chicago, Illinois from March 2015 to August 2015.

17.     Plaintiff Maurice Shelton is an adult resident of Gary, Indiana.  Mr. Shelton worked for Credico and Assurance International providing face-to-face marketing services to their clients in Chicago, Illinois from March 2015 to August 2015.

18.     The above named Plaintiffs bring their claims for failure to pay minimum wage and failure to pay overtime in violation of the FLSA on behalf of all similarly situated workers nationwide, who may choose to "opt-in" to this action pursuant to the FLSA, 29 U.S.C. §216(b).

19.     The above named Plaintiffs also bring their claims for failure to pay minimum wage and failure to pay overtime in violation of the Illinois Minimum Wage Law, as a Rule 23 class action, pursuant to the Federal Rules of Civil Procedure.

20.     Defendant Credico (USA) LLC ("Credico"), is a Delaware corporation with its principal place of business located at 525 W. Monroe Street, Suite 2350, Chicago, Illinois 60661.

21.     Defendant Assurance International, Inc. ("Assurance International") is an Illinois corporation with its principal place of business located at 55 E. Monroe Street, Suite 3800, Chicago, IL 60603.

22.     Defendant Jesse Young is an adult resident of New York.  Mr. Young is the president of Credico (USA) LLC.

## IV.    <u>STATEMENT OF FACTS</u>

### A.    Credico Operates a Nationwide Network of Face-to Face Marketing Companies from its Chicago Headquarters

23.     Defendant Credico contracts with companies in the telecommunications, financial services, and energy industries, as well as charitable organizations, to provide face-to-face sales and marketing services through its network of workers located throughout the country.

24.     Credico's clients include six Fortune 500 companies, including Verizon Communications Inc., Sprint Nextel Corp, and Comcast Cable Communications.

25.     In order to provide face-to-face sales and marketing services for its clients, Credico has created a nationwide network of subsidiary companies, and its workers must associate with one of these companies.

26.     Credico determines the criteria a worker must meet in order to start his own company in the Credico network.  Upon information and belief, these criteria include the number of other workers whom the potential business owner has recruited for Credico, and the amount of money the potential business owner has to start his

company.

27.    Upon information and belief, Credico determines which clients its subsidiary companies will provide services for, and the location in which the companies will operate.

28.    Upon information and belief, Credico receives a portion of the commissions that each of the subsidiary companies in its network earn for signing up new customers for Credico's clients.

29.    Each of the subsidiary companies in Credico's network must train its workers according to Credico's "Management Training Program."  This program dictates the manner in which the companies train their workers, and the manner in which the workers can approach potential customers.

30.    Credico's Management Training Program also dictates the manner in which the workers do their jobs, including the structure of their days, and the number of hours worked.

**B.    Assurance International is Controlled by Credico**

31.    Assurance International is one of the face-to- face sales and marketing subsidiary companies in Credico's nationwide network.

32.    Assurance International provides Credico's clients with face-to-face marketing services in and around Chicago, Illinois.

33.    Assurance International are required to train their workers according to Credico's "Management Training Program."  Credico's Management Training Program also dictates the manner in which the workers do their jobs, including the structure of their days, and the number of hours worked.

34.     Credico employees, including President Jesse Young, and Vice Presidents Rafael Diaz and Tim Kennedy, regularly participate in meetings with Assurance International's workers, both at Assurance International and Credico headquarters.

35.     Every Monday morning, Assurance International holds a meeting at which its workers learn about Credico.  Every Assurance International worker is required to attend at least one such meeting.

**C.     Defendants' Failure to Pay Minimum Wage or Overtime Pursuant to the FLSA**

36.     Each worker in Credico's network of subsidiary companies is assigned to promote the products or services of a specific client.  These workers approach potential customers in attempt to promote Credico's clients' products or services.

37.     These workers perform core work that is necessary to Credico's business, namely providing face-to-face sales and marketing services.

38.     Workers in the Credico network of subsidiary companies are supervised closely by their agents.  They are instructed in the details of their job performance, hours and location worked, and are monitored and reviewed frequently. Credico's subsidiary companies set weekly sales targets for their workers, who can be terminated for failure to meet these goals.

39.     By virtue of the extensive control Credico and its subsidiary companies exert over them, and the nature of their relationship with Credico and its companies, all of Credico's workers who provide face-to-face marketing services are jointly employed by Credico and its subsidiary companies such as Assurance International.

40.     As a precondition of employment, Credico and its subsidiary companies require that their workers participate in a training period. These workers are not paid during this training period.

41.     The initial required training period is different for each worker.  Training may take up to several weeks to complete.  During the training period, the workers learn Credico and its subsidiary companies' sales strategies, which they are required to employ once they begin working.  Credico and its subsidiary companies also instruct their workers in what to say when speaking with potential customers.

42.     Once the workers complete their training, they begin working for Credico and its subsidiary companies.  They are required to work approximately twelve hours per day, six days per week.

43.     Credico and its subsidiary companies require their workers to report to their offices at a certain time each morning for required team meetings and training sessions.  These meetings take place in an "atmosphere room" where loud music plays, and supervisors yell at workers to motivate them to make sales for the day.  At the conclusion of these meetings, Credico and its subsidiary companies provide their workers with a tablet, which they must use to sign up new customers for Credico's clients.  Credico's subsidiary companies then assign their workers the location to which they must report for their required shift.

44.     Workers are often accompanied to their assigned location by a more experienced worker, who has achieved the status of "Corporate Trainer" or "Account Manager," who supervises the workers during their shift.

45.     At the end of their shift, the workers are required to report back to

Credico's subsidiary companies' offices, or a designated location, by a certain time, where they must participate in additional meetings where they go over the workers' sales for the day.

46.     Credico and its subsidiary companies set weekly targets for their workers, and track their marketing numbers on a weekly basis. Workers can be terminated for failure to meet their targets in a given week.

47.     Credico and its subsidiary companies' workers are paid on a commission basis. These workers are not guaranteed, and frequently do not earn, minimum wage for all hours worked, and they are not paid overtime for hours worked over 40 in one week.

48.     Plaintiffs worked for Credico and its subsidiary Assurance Wireless in Chicago, Illinois.

49.     As a result of Credico and its subsidiary companies' policies, their workers routinely earn an hourly rate that is less than the federal minimum wage and Illinois minimum wage.

50.     Credico and its subsidiary companies' workers are typically required to work 72 hours per week. As a result of Credico and its subsidiary companies' policies, these workers have not been paid time-and-a-half for hours worked over 40 in a single week.

**COUNT I**

FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF
FLSA

51.     During many weeks, Plaintiffs and other workers providing face-to-face marketing services for Credico and its subsidiary companies' clients fail to earn the

federal minimum wage for all hours worked, particularly at the beginning of their employment when they are required to participate in unpaid training.  Defendants' knowing  and willful failure to pay Plaintiffs and other similarly situated individuals minimum wage  violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*  This claim is brought by  Plaintiffs on behalf of a class of similarly situated individuals, i.e. individuals who have  worked for Credico and its subsidiary companies, including Assurance International,  providing face-to-face marketing services from November 2012 to present, who may choose to "opt-in" to this case,  pursuant to 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PAY OVERTIME IN VIOLATION OF FLSA

52.    Every week, Plaintiffs and other workers providing face-to-face marketing services for Credico and its subsidiary companies' clients are required to work over 40 hours.  Plaintiffs and these similarly situated workers are not compensated time-and-a-half for those hours worked over 40 in one week.  Defendants' knowing and willful failure to pay Plaintiffs and other similarly situated individuals overtime compensation to which they are entitled violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* This claim is brought on behalf of a class of similarly situated individuals, i.e. individuals who have worked for Credico and its subsidiary companies providing face-to-face sales and marketing services from November 2012 to present, who may choose to "opt-in" to this case, pursuant to 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY MINIMUM WAGE AND OVERTIME IN VIOLATION OF ILLINOIS MINIMUM WAGE LAW

53.     During many weeks, Plaintiffs and other workers providing face-to-face marketing services in Illinois for Credico and its subsidiary companies' clients fail to earn the Illinois state minimum  wage for all hours worked, particularly at the beginning of their employment when they are  required to participate in unpaid training.  The Illinois Plaintiffs and other similarly situated  workers are also not paid overtime for hours worked over 40 in one week.  Credico and its  subsidiary companies' knowing and willful failure to pay the Illinois Plaintiffs and other  similarly situated individuals minimum wage and overtime violates 820 ILCS 105/1, *et seq.*

54.     Plaintiffs bring this claim as a class action on behalf of similarly situated individuals, i.e. individuals who have worked for Credico and its subsidiary companies in Illinois providing face-to-face marketing services, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

55.     The members of the Rule 23 class are readily ascertainable, because the number and identity of the Illinois Rule 23 class members are determinable from Credico and its subsidiary companies' records.  For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Credico and its subsidiary companies.  Notice can be provided by means permissible under Rule 23.  This action is properly maintainable as a class action under Fed. R. Civ. P. 23(a)-(b).

56.     The class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

57.     The Plaintiffs' claims are typical of those claims which could be

alleged by any class member, and the relief sought is typical of the relief which would be sought by each Illinois Rule 23 class member in separate actions. All the Illinois Rule 23 class members were subject to the same corporate practices of Credico and its subsidiary companies, as alleged herein, of failure to pay minimum wage and overtime.

58. The Plaintiffs and other Rule 23 class members sustained similar losses, injuries, and damages resulting from Credico and its subsidiary companies' failure to pay minimum wage and overtime in compliance with the Illinois Minimum Wage Law. The Plaintiffs and the Rule 23 class members have all been injured in that they have been uncompensated or under-compensated due to Credico and its subsidiary companies' common policies, practices, and patterns of conduct. These corporate-wide policies and practices affected all Rule 23 class members similarly, and Credico and its subsidiary companies benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 class members.

59. The Plaintiffs are able to fairly and adequately protect the interests of the Illinois Rule 23 class members and have no interests antagonistic to the Rule 23 class members. The Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

60. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants, and are often hesitant to assert their rights out of fear of direct or indirect retaliation. Class action treatment will permit a

large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

61.     Common questions of law and fact exist as to the Rule 23 class members that predominate over any questions only affecting the Plaintiffs and the Rule 23 class members individually. These questions include whether Credico and its subsidiary companies paid the Plaintiffs and the Rule 23 class members at the proper minimum wage rate for all hours worked and overtime for hours worked over 40 in one week.

## JURY DEMAND

Plaintiffs request a trial by jury on all of their claims.

WHEREFORE, the Plaintiffs request that this Court enter the following relief:

1. Permission for plaintiffs to notify fellow workers of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

2. Restitution for the federal minimum wage;

3. Restitution for the federal overtime;

4. Permission to pursue their state claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

5. Restitution for the Illinois minimum wage;

6. Restitution for the Illinois overtime;

7. Liquidated damages;

14

8.     2% per month interest on all minimum and overtime compensation due accruing from the date such amounts were due until it is paid;

9.

10.     Attorneys' fees and costs;

11.     Any other relief to which the plaintiffs and class members may be entitled.

Respectfully submitted,

MAURICE SHELTON, CHAD WHITNEY, and SCHANELL ROWLETT
individually and on behalf of all other similarly situated,

By their attorneys,


   /s/ James B. Zouras
James B. Zouras
STEPHAN ZOURAS, LLP
205 N. Michigan Ave, Suite 2560
Chicago, IL 60601
(312) 233–1550
JZouras@stephanzouras.com

Harold Lichten, *pro hac vice*
Jill Kahn, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994–5800
hlichten@llrlaw.com
jkahn@llrlaw.com

Dated:     November 11, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2015, a copy of this document was filed via this Court's CM/ECF system.

    /s/ James B. Zouras
James B. Zouras, Esq.